**SCURLOCK OIL COMPANY and Ernest Joe Lewis, Appellants,**

v.

**Maria C. SMITHWICK Individually, et al., Appellees.**

No. 13–88–493–CV.

Court of Appeals of Texas, Corpus Christi.

March 29, 1990.

Rehearing Dismissed April 19, 1990.

B. Mills Latham, Law Offices of B. Mills Latham, Corpus Christi, W. James Kronzer, Houston, A.E. Pletcher, White, Huseman, Pletcher & Powers, Corpus Christi, James A. Smith, Port Lavaca, Lev Hunt, Hunt, Hermansen, McKibben & Barger, Corpus Christi, Jack Tucker, Jr., Weitinger & Tucker, Houston, Kevin D. Cullen, Cullen, Carsner & Cullen, Victoria, for appellants.

William A. Dudley, David Perry & Associates, Corpus Christi, Rodney Steinburg, Steinburg & Bryant, Houston, William R. Edwards, Edwards & Perry, Corpus Christi, for appellees.

Before DORSEY, UTTER and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

On December 9, 1982, at approximately 9:30 p.m., Joe Ernest Lewis was driving an eighteen-wheel tractor trailer for Scurlock Oil Company down a farm to market road when he left the road and collided with a Suburban, killing two of the Suburban's passengers, George Smithwick and Clay Dove. The Suburban was owned and operated by Ronnie Wayne Bounds, d/b/a Victoria Carrier Service; Missouri Pacific Railroad (MoPac) had hired Bounds and his vehicle to transport some of its train crew members to a worksite.

The accident resulted in the filing of three separate lawsuits, one by the representatives of Dove's estate in Matagorda County, one by Bounds in Calhoun County, and a third by the representatives of Smithwick's estate in Nueces County. This appeal seeks relief from the judgment rendered against Scurlock and Lewis in the retrial after remand of the Nueces County suit. *See Scurlock Oil Co. v. Smithwick*, 701 S.W.2d 4 (Tex.App.—Corpus Christi, 1985), *reversed*, 724 S.W.2d 1 (Tex.1986).

In the prior *Smithwick* case, the Smithwicks brought suit against Scurlock Oil Company, its truck driver, Lewis, MoPac and Ronnie Lee Bounds. The Smithwicks, however, entered into a Mary Carter agreement with Missouri Pacific whereby no matter what the verdict, the family would receive 2.5 million dollars from Missouri Pacific. The jury found that Scurlock alone, acting by and through its employee, Lewis, was negligent. On appeal, Scurlock contended that the doctrine of collateral estoppel should apply so that the jury findings in the Matagorda County case (wherein Dove's family were plaintiffs) would control the determination of fault. Scurlock entered into a Mary Carter agreement with the Matagorda County Dove plaintiffs. The jury in that case found that 90 percent of the fault for the accident lay with Missouri Pacific and only 10 percent lay with Scurlock. This Court affirmed the trial court's judgment in *Scurlock*, and the Supreme Court reversed and remanded the suit for new trial. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex.1986).

Upon retrial, the jury found that Scurlock and Lewis were independently negligent, apportioning fault 70 percent and 30 percent respectively. By their first point of error, Scurlock and Lewis contend that the trial court erred in failing to apply the doctrine of collateral estoppel to the retrial of this cause. Scurlock and Lewis would have us hold that the jury findings in the *Bounds* case where the plaintiff, Bounds, was found to be 100 percent negligent precludes the issue of negligence here. Secondly, appellants would have the findings in the *Dove* case where Bounds was found to be a borrowed employee of MoPac apply in the instant case. To combine these two prior findings would result in the conclusion that MoPac, responsible for the ac-

tions of its borrowed servant, Bounds, is 100 percent negligent and thus solely liable. Thus, appellants argue that appellees are collaterally estopped for denying the findings previously determined in the two associated suits arising out of the fatal accident. The question presented, then, is whether the trial court erred in refusing to hold that these combined findings in the prior suits are binding on the parties here.

■ Collateral estoppel, or issue preclusion, prohibits the relitigation of any ultimate issue actually litigated and essential to the prior judgment. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984); Restatement (Second) of Judgments § 27 (1982). The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in a prior suit. *Bonniwell*, 663 S.W.2d at 818. However, even though an issue is actually litigated and determined by a final judgment, relitigation of the issue is not necessarily precluded where significant differences exist between the two proceedings. *Scurlock*, 724 S.W.2d at 7; Restatement (Second) of Judgments § 27 (1982).

The party seeking to invoke the doctrine of collateral estoppel must establish that (1) the facts sought to be litigated in the second suit was fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *See, e.g., Bonniwell*, 663 S.W.2d at 818; *Dent v. Federal Sign & Signal Corp.*, 773 S.W.2d 599 (Tex.App.—Dallas 1989, no writ); Restatement (Second) of Judgments § 27 (1982). The burden is on appellants to present sufficient evidence to establish that the doctrine of collateral estoppel should apply. *Traweek v. Larking*, 708 S.W.2d 942, 945 (Tex.App.—Tyler 1986, writ ref'd n.r.e.); *City of Houston v. Houston Chronicle Publishing Co.*, 673 S.W.2d 316, 321 (Tex.App.—Houston [1st Dist.] 1984, no writ). The party asserting collateral estoppel must introduce into evidence the judgment and pleadings from the prior suit or the doctrine will not apply. *Traweek*, 708 S.W.2d at 945; *City of Houston*, 673 S.W.2d at 321.

■ The initial obstacle to applying the *Bounds* findings in this case is that MoPac was not a party to the *Bounds* decision. *See generally, Bounds v. Scurlock Oil Co.*, 730 S.W.2d 68 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). It was incumbent upon appellants to affirmatively establish that Bounds represented MoPac's interests in the previous suit in order to bind MoPac in the instant case. *See Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex.1989). Absent evidence establishing the relationship of the parties and the issues actually litigated, the trial court properly denied the application of collateral estoppel. In the instant case, the record establishes that appellants urged the trial court to apply the doctrine of collateral estoppel in a partial motion for summary judgment. The trial court denied the motion. However, neither the *Bounds* judgment nor the *Dove* judgment was admitted into evidence during the trial on the merits of this cause. The pleadings from the two cases were also not introduced into evidence.

Assuming *arguendo* that the *Dove* and *Bounds* decisions were properly introduced into evidence, the trial court did not abuse its discretion in denying the application of the collateral estoppel in this case. The Supreme Court of Texas addressed the problems which arise when complex litigation involving multiple suits and Mary Carter agreements occurs. *Scurlock*, 724 S.W.2d at 1. The *Dove* case involved a Mary Carter agreement. The Court in *Scurlock*, held that whether to allow collateral estoppel and issue preclusion based upon findings in a prior trial when a Mary Carter agreement is present is within the discretion of the trial court subject to that court's consideration of the "fairness factors" outlined in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). *Id.* at 7. The existence of a Mary Carter agreement does not prevent issue preclusion, but the trial court is to exercise its sound discretion. *Id.* The test for abuse of discretion

is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aqua–Marine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). *Pierce v. Gillespie*, 761 S.W.2d 390, 398 (Tex.App.—Corpus Christi 1988, no writ) (Opinion on motion for rehearing). The pertinent guiding rules and principles here are found in *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651. They are:

(1) Whether use of collateral estoppel will reward a plaintiff who could have joined in the previous action but chose to "wait and see" in the hope that the first action by another plaintiff would result in a favorable judgment;

(2) Whether the defendant in the first action had the incentive to litigate the previous suit fully and vigorously;

(3) Whether the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result; and

(4) Whether the judgment in the first action is inconsistent with any previous decision.

That a trial judge decides a matter within his discretion differently than another judge would have in a similar circumstance does not demonstrate abuse of discretion. *Pierce*, at 398.

As applied to the instant case, we cannot say from the record that the trial court's decision was arbitrary. *See Simon v. York Crane and Rigging Co. Inc.*, 739 S.W.2d 793 (Tex.1987).

In the *Bounds* suit, the defendants were Scurlock and Lewis. Bounds was the plaintiff, while in the action before us, he is a defendant. The outcome of his action differed from the outcome of Dove's in Matagorda County in that the jury found Bounds 100 percent negligent. In the *Dove* suit, the jury found that Bounds was a borrowed servant of MoPac and that MoPac was for the first time 90 percent negligent. Additionally, in this case, the court asked the jury to consider the negligence of each defendant independently of the others. Thus, the *Bounds* and *Dove* decisions involve different parties and determinations of fault. Under the circumstances, we cannot say the trial court was compelled to adopt the liability findings of the prior *Bounds* trial and the borrowed servant findings in the *Dove* trial. These facts were evaluated by the trial court under the *Parklane* guidelines. Thus, The trial court did not abuse its discretion. Point of error one is overruled.

By points two, three, four and five, Scurlock challenges the jury's findings that Scurlock's gross negligence proximately caused the accident and that the percentage of fault attributable to Scurlock is 70 percent. Scurlock maintains there is no evidence to support the verdict, and the trial court erred in failing to grant it judgment N.O.V.

In reviewing "no evidence" points of error, we will follow the well-established tests in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.) and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960). The court considers only the evidence, and the reasonable inferences therefrom which, viewed in its most favorable light, supports the jury finding, and disregards the evidence which is contrary to the verdict. *Glover*, 619 S.W.2d at 401.

Gross negligence is defined in this state as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 572 (Tex.1985), *quoting Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981).

We have examined the record to determine whether there is any evidence greater than a scintilla that Scurlock acted with such an absence of care to amount to a conscious indifference as to the safety of the public on the roadways. Judson S. Matthias, an expert on highway and traffic safety, testified that 40 percent of all heavy truck accidents are caused by driver

fatigue. He opined that Lewis' fatigue played a role in this accident, citing Lewis' age at the time of the accident, that Lewis had been on duty for twelve hours prior to the wreck, and that the routes traveled were irregular, all of which contributed to Lewis' fatigue. He referred to a number of studies done over the last twenty-five years on the effects of driver fatigue, with the same results: accidents increase with driver fatigue. The Department of Public Safety officer who investigated this accident, Pedro Masiel, testified that the response Lewis described having when he saw the lights of the Suburban were consistent with the response of one who is being just awakened.

Matthias further testified that the limited training Scurlock had given Lewis some twenty-three years earlier was inadequate from a safety standpoint and that it was not a good practice, from a safety standpoint, to fail to limit the number of loads the trucks make in a day. He stated that Scurlock's method of paying its drivers based on the number of loads hauled and the miles driven tended to cause drivers to drive long hours at high speeds. Finally, he opined that such practices by Scurlock showed "total disregard for the safety of people on the highway."

Such testimony from an expert constitutes some evidence, more than a scintilla, to support the jury's findings that Scurlock was grossly negligent, which proximately caused the collision. Points of error two, three, four and five are overruled.

■ By point six, Lewis contends that there is no evidence to support the jury's finding that he was grossly negligent on the occasion in question. The testimony of Judson Matthias, *supra,* is some evidence that Lewis was too fatigued on the night of the accident to be driving. Lewis himself testified that he saw lights of the Suburban but did not take his foot off the gas pedal until he left the road. He never did attempt to downshift or brake in order to slow down more rapidly, even though he was ostensibly blinded by the lights of the Suburban.

Moreover, Pedro Masiel testified that from up in the tractor, Lewis could not have been blinded by the lights of the Suburban, although his response would have been as he (Lewis) described it had he been dozing when he left the road, the jolt from leaving the road causing him to open his eyes. Masiel and Matthias both testified that Lewis should have attempted to slow down long before he did, and that the failure to slow down more and sooner contributed to the accident. This is some evidence, greater than a scintilla, of gross negligence on Lewis' part. Point of error six is overruled.

By its seventh point of error, Scurlock asserts that there is no evidence that it authorized, approved or ratified Lewis' conduct the night of the accident, so as to make it vicariously liable for Lewis' gross negligence. This issue is not dispositive, as we have held that there is some evidence of Scurlock's gross negligence that forms a legal predicate for punitive damages against Scurlock.

■ By the eighth point of error, Scurlock contends that the trial court erred in awarding prejudgment interest on the punitive damage award. The trial court awarded members of the Smithwick family prejudgment interest on the entire judgment.

Scurlock asserts that the award of prejudgment interest was first prohibited under *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), followed by legislative prohibition under Tex.Civ. Prac. & Rem.Code Ann. § 41.006 (Vernon Supp.1989). The Smithwicks claim that Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Vernon Supp.1989) controlled at the time the judgment in this case was rendered and permitted the prejudgment interest awarded.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) provides that "[j]udgments in wrongful death, personal injury and property damage cases must include prejudgment interest." The statute became effective September 2, 1987, and the legislature provided that the statute would apply only to "(1) an action commenced on or after the effective date of [the statute]; or (2) a new

trial or retrial following appeal of the trial court's judgment in an action commenced before the effective date of [the statute]." Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 note (Vernon Supp.1989). By this statute, the legislature thus amended Title 79 of the Revised Statutes of this state entitled "Interest—Consumer Credit—Consumer Protection." In stating its intention in amending Title 79 in 1967, the legislature declared:

> (6) It is the intent of the Legislature in enacting this revision of Title 79 of the Revised Civil Statutes of Texas, 1925, to protect the citizens of Texas from abusive and deceptive practices now being perpetrated by unscrupulous operators, lenders and vendors in both cash and credit consumer transactions and to implement the mandate of Section II of Article XVI of the Constitution of Texas which authorizes the Legislature to classify loans and lenders, license and regulate lenders, *define interest and fix maximum rates of interest,* and thus serve the public interest of the people of this State. (emphasis added.)

It is argued by Scurlock, on the other hand, that certain provisions of the Civil Practice and Remedies Code address the same subject matter, but with greater specificity. Tex.Civ.Prac. and Rem.Code Ann. § 41.006 states, "Prejudgment interest may not be assessed or recovered on an award of exemplary damages." This provision was passed by the legislature as part of the Tort Reform Act of 1987. Section 4.05 of the Act, appearing as a note to § 9.001 of the Code states that § 41.006 applies "only to suits filed on or after the effective date of this Act." The effective date of this statute is also September 2, 1987. The suit before us was filed long before 1987. However, the legislature went on to state that with respect to suits filed *prior* to September 2, 1987, the matter of prejudgment interest awards on punitive damages is governed by "the applicable law in effect before that date … *including any new trial or retrial of any such suit following appeal of the trial court's judgment."* Tex.Civ.Prac. and Rem.Code Ann. § 9.001 note (Vernon Supp. 1989). (emphasis added).

Clearly, no matter which statute we examine, the law in effect *prior* to September 2, 1987, was *Cavnar,* and *Cavnar* prohibited prejudgment interest on awards of punitive damages.

We are of the opinion that *Cavnar* is controlling here with respect to the prejudgment interest awarded on the punitive damages. The Tort Reform Act as codified in the Civil Practices and Remedies Code quite specifically addresses awards of prejudgment interest on punitive damages. Title 79 of the Revised Statutes is concerned with interest on judgments only generally. It is well-settled in Texas that when the law makes a general provision for all cases and a special provision for a particular class of cases, the general must yield to the special insofar as the particular class is concerned. *City of Houston v. Arney,* 680 S.W.2d 867, 875 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Ayre v. Brown & Root, Inc.* 678 S.W.2d 564, 566 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Point eight is sustained. The calculation of prejudgment interest should not have included those amounts awarded as punitive damages.

In their brief, Scurlock and Lewis also complain that the trial court "otherwise awarded excessive interest." By this they contend that the trial court improperly awarded prejudgment interest on future damages. However, this complaint was not raised in the trial court and therefore was not preserved for review.

■ In their final point of error, Scurlock and Lewis assert that the award of punitive damages violates the Eighth Amendment to the United States Constitution. The Eighth Amendment is inapplicable to awards of exemplary damages. *Browning Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Victoria Bank and Trust v. Brady,* 779 S.W.2d 893, 912 (Corpus Christi 1989, writ requested). We decline to address the remaining contentions under point nine regarding error in the award of exemplary

damages for the reason that such contentions were not preserved for review. Point of error nine is overruled.

We affirm the judgment in part and reverse in part. We remand to the trial court for recalculation of prejudgment interest in accordance with this opinion. The motions to dismiss the appeal filed by Missouri Pacific, Smithwick, Victoria Carrier Service, and Ronnie Wayne Bounds carried with the case are denied.

UTTER, J., not participating.