In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00131-CV


______________________________




TEXAS CAPITAL SECURITIES


MANAGEMENT, INC., ET AL., Appellants



V.



J. D. SANDEFER, III, ET AL., Appellees




 


On Appeal from the 270th Judicial District Court


Harris County, Texas


Trial Court No. 1999-08372




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Thomas Buckley, Patrick Smetek, Thomas R. Reckling, IV, and Texas Capital
Securities Management, Inc. (TCSM) (collectively Appellants) appeal the trial court's
granting of summary judgment in favor of J. D. Sandefer, III, and Stephen F. Smith
(Appellees) on their claims under the Texas Securities Act. (1) Appellees sued Appellants
for common-law fraud, statutory fraud, violation of the Texas Securities Act, and
constructive fraud. Appellees nonsuited as to the fraud claims, leaving only the violation
of the Texas Securities Act claim. 

 Appellants contend that the trial court erred in granting Appellees' motion for
summary judgment and that the trial court erred in not reducing the sum of money awarded
in the summary judgment, or in not deeming the judgment satisfied. Reckling further
contends the trial court erred by not granting his post-trial motions.

 In Texas Capital Securities v. Sandefer, Appellees sued various defendants and
recovered damages stemming from the sale of stock in Titan Resources, Inc. Tex. Capital
Sec., Inc. v. Sandefer, 58 S.W.3d 760 (Tex. App.-Houston [1st Dist.] 2001, two pets.
denied). Appellants were not parties to that lawsuit. The evidence in that case showed
that Sandefer and Smith each invested in Titan based on the recommendation and
representations of Steven Johnson, a stockbroker with Texas Capital Securities, Inc., and
that both suffered losses when the value of the stock fell. Appellees sued Titan, Harris D.
Ballow (a stock promoter and principal at Titan), Johnson, and Texas Capital Securities,
Inc. Titan and Johnson settled before trial. A jury found that Ballow and Texas Capital
Securities, Inc. made fraudulent misrepresentations to Appellees. The jury further found
Ballow and Texas Capital Securities, Inc. jointly and severally liable for the $359,063.00
purchase price of the stock and determined that Ballow should pay eight million dollars in
punitive damages. 

 In this case, Appellees sued Appellants individually for violations of the Texas
Securities Act, contending they are control persons and aiders under Article 581-33 of the
Texas Securities Act and are therefore liable for the conduct of Texas Capital Securities,
Inc. Appellees contend that, as control persons, Appellants were in a position to prevent
the violations of the Act found against Texas Capital Securities, Inc. in the Texas Capital
case. Id. at 775-76.

 Appellants first contend the trial court erred in holding them jointly and severally
liable for the sums for which Texas Capital Securities, Inc. is liable to Appellees under the
final judgment in the Texas Capital case. Appellees moved for a traditional summary
judgment under Tex. R. Civ. P. 166a(c), based on the principle of collateral estoppel,
contending Appellants are prevented from contesting the liability of Texas Capital
Securities, Inc. for violating the Texas Securities Act. Appellees contend the issue of
Texas Capital Securities, Inc.'s liability has already been litigated, and because Appellants
were in privity with Texas Capital Securities, Inc., the Texas Capital judgment establishes
their liability under the Texas Securities Act. Appellees also moved for traditional summary
judgment based on Appellants' status as "control persons," as defined by the Texas
Securities Act. Appellees contend Appellants are also liable for the actions of Texas
Capital Securities, Inc. pursuant to this status. Appellees further moved for traditional
summary judgment that Appellants cannot prevail on one of the elements of their
affirmative defense. Appellees finally moved for a no-evidence summary judgment under
Tex. R. Civ. P. 166a(i) because they contend there is no evidence to support Appellants'
affirmative defenses. 

 Summary judgment under Rule 166a(c) may only be granted in favor of the movants
if they prove there is no genuine issue of material fact and they are entitled to judgment as
a matter of law. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). 
Because the movant bears the burden of proof, all conflicts in the evidence are
disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the
genuine issue of material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. Id.
at 549. 

 A no-evidence summary judgment is essentially a pretrial directed verdict. We
therefore apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. McCombs v. Children's Med. Ctr.,
1 S.W.3d 256, 258-59 (Tex. App.-Texarkana 1999, pet. denied); Jackson v. Fiesta Mart,
Inc., 979 S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.). 

 Appellants contend Appellees failed to establish the requisites of collateral estoppel. 
Collateral estoppel is also known as issue preclusion. Van Dyke v. Boswell, O'Toole, Davis
& Pickering, 697 S.W.2d 381, 384 (Tex. 1985). Collateral estoppel is more narrow than
res judicata in that it only precludes the relitigation of identical issues of fact or law that
were actually litigated and essential to the judgment in a prior suit. Id.; see Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). Once an actually litigated and
essential issue is determined, that issue is conclusive in a subsequent action between the
same parties. Van Dyke, 697 S.W.2d at 384. Thus, unlike the broader res judicata
doctrine, collateral estoppel analysis does not focus on what could have been litigated, but
only on what was actually litigated and essential to the judgment. 

 In order to invoke collateral estoppel, a party must establish that: 1) the facts sought
to be litigated in the first action were fully and fairly litigated in the prior action; 2) those
facts were essential to the judgment in the first action; and 3) the parties were cast as
adversaries in the first action. Eagle Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 721
(Tex. 1991). Mutuality is not required for the invocation of collateral estoppel; rather, it is
only necessary that the party against whom the plea of collateral estoppel is being asserted
be a party or in privity with a party in the prior litigation. Id. 

 Appellees had the burden to present sufficient evidence to establish that the
doctrine of collateral estoppel is applicable. See Scurlock Oil Co. v. Smithwick, 787
S.W.2d 560, 562 (Tex. App.-Corpus Christi 1990, no writ). "To meet this burden, the party
relying on the doctrine is required to introduce into evidence both the prior judgment and
pleadings from the prior suit." Jones v. City of Houston, 907 S.W.2d 871, 874 (Tex.
App.-Houston [1st Dist.] 1995, writ denied); see Cuellar v. City of San Antonio, 821 S.W.2d
250, 256 (Tex. App.-San Antonio 1991, writ denied); Smithwick, 787 S.W.2d at 562 (party
asserting collateral estoppel must introduce into evidence judgment and pleadings from
prior suit or doctrine will not apply); Traweek v. Larkin, 708 S.W.2d 942, 945 (Tex.
App.-Tyler 1986, writ ref'd n.r.e.) (doctrine of collateral estoppel not applicable in second
suit if party does not introduce both prior judgment and pleadings); but see Bass v.
Champion Int'l Corp., 787 S.W.2d 208, 214 (Tex. App.-Beaumont 1990, no writ) (finding
no error in basing summary judgment on judgment alone without pleadings because
judgment so clearly stated what was determined by earlier court there was no need to
resort to pleadings). We agree with the reasoning in Bass that, so long as the record
before the court in the second case adequately provides what was determined in the earlier
case, pleadings need not be filed. 

 In this case, Appellees filed a copy of the judgment and jury charge with their motion
for summary judgment, but did not include a copy of the pleadings from the Texas Capital
case. Appellees contend the judgment and jury charge satisfy the purpose of attaching the
pleadings. Appellees further contend that, at any rate, the pleadings from the Texas
Capital case were part of the record before the trial court because Reckling included the
plaintiffs' fourth amended original petition from that case in his response to Appellees'
motion for summary judgment in this case. Actually, what Reckling included in his
response was a copy of Sandefer and Smith's motion for leave to join additional parties in
the Texas Capital case. It was this motion that had a copy of plaintiffs' fourth amended
original petition attached as an exhibit. The record shows the trial court in the Texas
Capital case denied the motion to join additional parties. Therefore, plaintiffs' fourth
amended original petition never became a live pleading in the Texas Capital case. 

 Despite the lack of pleadings, the record before us contains the jury charge and
judgment from the Texas Capital case and, taken together, clearly state what was
determined in that case. 

 Appellants contend that Appellees have failed to prove there is no genuine issue of
material fact and that Appellants were, as a matter of law, in privity to the parties in the
Texas Capital case. "Due process requires that the rule of collateral estoppel operate only
against persons who have had their day in court either as a party to the prior suit or as a
privy, . . . ." Benson v. Wanda Petroleum Co., 468 S.W.2d 361, 363 (Tex. 1971); see
Eagle Props., Ltd., 807 S.W.2d at 721; Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816,
819 (Tex. 1984). There is no general definition of privity, and the determination of who are
privies requires a careful examination into the circumstances of each case. Dairyland
County Mut. Ins. Co. v. Childress, 650 S.W.2d 770, 774 (Tex. 1983); Benson, 468 S.W.2d
at 363. "[T]he word 'privy' includes those who control an action although not parties to
it * * *; those whose interests are represented by a party to the action * * *; successors in
interests." Benson, 468 S.W.2d at 363; see Getty Oil Co. v. Ins. Co. of N. Am., 845
S.W.2d 794, 800-01 (Tex. 1992); Dairyland County Mut. Ins. Co., 650 S.W.2d at 774. 
Privity connotes those who are in law so connected with a party to the judgment as to have
such an identity of interest that the party to the judgment represented the same legal right. 
Benson, 468 S.W.2d at 363; Cannon v. Tex. Indep. Bank, 1 S.W.3d 218, 224 (Tex.
App.-Texarkana 1999, pet. denied). 

 Appellants contend their interests were not actually and adequately represented in
the Texas Capital case, so it is not fair to bind them to the prior results. See Eagle Props.,
Ltd., 807 S.W.2d at 721. Appellees argue that directors of a corporation are automatically
in privity with the corporation and cite Eagle Properties for their position. See id. The
directors in Eagle Properties, as in this suit, were defendants. However, unlike this suit,
the directors in Eagle Properties were the ones seeking to assert collateral estoppel
against the plaintiffs. The Texas Supreme Court's specific holding was that mutuality is not
required for the invocation of collateral estoppel; rather, it is only necessary that the party
against whom the plea of collateral estoppel is being asserted be a party or in privity with
a party in the prior litigation. Id. No one asserted collateral estoppel against the directors
in Eagle Properties, and the Texas Supreme Court did not hold the directors were in privity
with anyone in the prior suit. Id. Appellees' reliance on Eagle Properties is misplaced; they
have not directed us to any other case holding that a party's status as director or officer
automatically makes the party a privy, and we have not found a case so holding. 

 Federal courts have held stockholders and officers are not in privity to their
corporations. Dudley v. Smith, 504 F.2d 979, 982 (5th Cir. 1974); Am. Range Lines, Inc.
v. Comm'r of Internal Revenue, 200 F.2d 844, 845 (2d Cir. 1952). This status does not
automatically show the parties had control over the prior action or that their interests were
represented by a party to the action. Benson, 468 S.W.2d at 363. The question of privy
revolves around the prior cause of action, not the time of injury. See Myrick v. Moody Nat'l
Bank, 590 S.W.2d 766, 769 (Tex. Civ. App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.). 

 Appellees present evidence that, when they purchased the Titan stock in 1996, an
unamended form filed in 1993 with the National Association of Securities Dealers (NASD)
lists Smetek, Reckling, and Buckley as officers of Texas Capital Securities, Inc. Appellees
provide no evidence that at the time of the Texas Capital case these three appellants still
held these positions. Smetek and Reckling both create genuine issues of material fact in
their affidavits. Smetek states he was president and a director until 1997. The Texas
Capital case was instigated in late 1997. Reckling denies being an officer or director of
Texas Capital Securities, Inc. in his affidavit. Each of these affidavits creates genuine
issues of material fact on the issue of privity. The evidence clearly shows all three are
shareholders, but a party's mere status as shareholder does not create privity absent
further evidence. Although Buckley did not dispute being an officer during the Texas
Capital case, the only evidence put forth by Appellees was that Buckley was the secretary
and treasurer. This status alone, without more evidence, does not, as a matter of law,
establish privity. Appellees presented no evidence Buckley, Smetek, Reckling, or TCSM
participated in the Texas Capital lawsuit. In fact, Reckling contends he had no knowledge
of the suit until the very end.

 Appellees contend TCSM, a wholly owned subsidiary of Texas Capital Securities,
Inc., is in privity with Texas Capital Securities, Inc., based on a management role. The
evidence provided to show TCSM's management role is the 1997 annual report which
states: 

 Texas Capital Securities Management Co., Inc. has entered into an
agreement to indemnify the Company, assume primary liability related to
certain settlement agreements with former customers and pay certain legal
fees. The Company paid Texas Capital Securities Management Co., Inc.
$154,000 during 1997. This amount is reflected in management fees.


No further evidence is provided as to what TCSM did. There is no evidence TCSM exerted
control over or managed Texas Capital Securities, Inc. in any way. Buckley's affidavit
states TCSM has never been in a position of control over Texas Capital Securities, Inc. and
that it is merely a service provider and is not engaged in the securities business.

 Appellees also contend the fact that Appellants used the same attorney as Texas
Capital Securities, Inc. shows they are in privity with Texas Capital Securities, Inc. They
direct our attention to caselaw stating that an attorney's knowledge gained during the
existence of the attorney-client relationship is imputed to the client. Allied Res. Corp. v.
Mo-Vac Serv. Co., 871 S.W.2d 773, 778 (Tex. App.-Corpus Christi 1994, writ denied). 
Appellees would have us extend this principle of imputed knowledge to the circumstances
of this case, where Appellants hired the attorney who represented Texas Capital
Securities, Inc. in the Texas Capital case. Appellees contend this mutual representation
in separate actions imputes privity. The caselaw on which they rely deals with settled law
that imputes the knowledge of an attorney to the client in that attorney-client relationship. 
The mere fact that these Appellants enlisted the services of the same attorney who
defended Texas Capital Securities, Inc. in the previous case does not prove privity
between Appellants and Texas Capital Securities, Inc.

 Genuine questions of fact remain regarding each of the Appellants and whether they
were in privity with Texas Capital Securities, Inc. We hold the trial court erred in applying
collateral estoppel to the Appellants. 

 Appellants' second point of error concerns the determination by the trial court in its
summary judgment that Appellants are liable as control persons under the Texas Securities
Act. Appellees seek to establish joint and several liability of Appellants as control persons
for Texas Capital Securities, Inc.'s violations of the Texas Securities Act. Appellants
contend the trial court erred in holding they are control persons under the Act. Tex. Rev.
Civ. Stat. Ann. art. 581-33(F)(1) (Vernon Supp. 2002). 

 Under the Act, a control person is:

 A person (2) who directly or indirectly controls a seller, buyer, or issuer of a
security is liable . . . jointly and severally with the seller, buyer, or issuer, and
to the same extent as if he were the seller, buyer, or issuer, unless the
controlling person sustains the burden of proof that he did not know, and in
the exercise of reasonable care could not have known, of the existence of
the facts by reason of which the liability is alleged to exist. 


Id.


 The burden rested on the Appellees to establish that the Appellants are control
persons under the statute. Appellants contend genuine issues of material fact remain as
to whether they are control persons, and therefore the trial court improperly granted
summary judgment.

 The Texas Securities Act does not provide a definition of "control persons." Id. The
comments to the statute state, "control is used in the same broad sense as in federal
securities law." Tex. Rev. Civ. Stat. Ann. art. 581-33F cmt. "Depending on the
circumstances, a control person might include an employer, an officer or director, a large
shareholder, a parent company, and a management company." Id. (3) The rationale for
control person liability is that a control person is in a position to prevent the violation and
may be able to compensate the injured investor when the primary violator is not. Id. The
United States Fifth Circuit Court of Appeals has held that, to make a prima facie case that
the defendant is a control person, a plaintiff must prove that each had actual power or
influence over the controlled person and that each induced or participated in the alleged
violation. Dennis v. Gen. Imaging, Inc., 918 F.2d 496, 509 (5th Cir. 1990); G.A. Thompson
& Co. v. Partridge, 636 F.2d 945, 958 (5th Cir. 1981).

 As evidence of Smetek's, Buckley's, and Reckling's status as control persons,
Appellees rely partly on the "Form BD" filed by Texas Capital Securities, Inc. in 1993 with
the NASD, which lists Smetek, Buckley, and Reckling as control persons. Appellants
contend this form does not prove they are control persons for purposes of the Texas
Securities Act. They contend Appellees have not proved the term "control person" has the
same meaning for purposes of the NASD as under the Texas Securities Act. NASD "Form
BD" has instructions defining the term "control," but this definition was not included in
Appellees' summary judgment evidence. In the absence of such definition, we cannot say
the label of "control person" on the NASD form conclusively establishes Appellants as
control persons under the Texas Securities Act.

 The evidence presented clearly proves Smetek was president, a director of Texas
Capital Securities, Inc., and owned between ten and twenty-five percent of the stock when
the transactions occurred in 1996. According to the forms filed with the NASD, Buckley
owned between ten and twenty-five percent of the stock. Both the form and Buckley's
affidavit reveal he was secretary and treasurer of Texas Capital Securities, Inc. However,
status alone does not automatically cause defendants to be deemed control persons under
the statute. See Dennis, 918 F.2d at 509. Evidence was required that Smetek and
Buckley had influence over at least the direction of Texas Capital Securities, Inc. See id. 
Smetek states in his affidavit that he was not responsible for reviewing information that
companies seeking investors wanted forwarded to Texas Capital Securities, Inc.
customers, that he was unaware any Texas Capital Securities, Inc. customer had invested
with Titan, and that he had no knowledge of the investments and no reason to have
knowledge of the investments. Genuine issues of material fact remain regarding whether
Smetek was a control person, and the trial court erred in granting summary judgment. As
for Buckley, the evidence shows he was secretary and treasurer of Texas Capital
Securities, Inc., but his affidavit shows that he did not hold a license entitling him to
supervise registered representatives and that he was not responsible for supervising Texas
Capital Securities, Inc. brokers or representatives, did not review information that
companies seeking investors wanted forwarded to Texas Capital Securities, Inc.
customers, and had no knowledge or reason to have knowledge of the purchase of Titan
stock by Texas Capital Securities, Inc. customers. Because genuine issues of material fact
remain regarding Buckley's status as a control person, the trial court erred in granting
summary judgment on this issue as to Buckley. 

 Although the NASD forms list Reckling as a vice president, Reckling's affidavit
states his relationship with Texas Capital Securities, Inc. was that of a shareholder and that
he was not an officer or director. This clearly creates a fact question as to Reckling's
status. The trial court improperly granted summary judgment holding that Reckling was
a control person. 

 We finally consider whether it was proper to grant summary judgment holding that
TCSM, a wholly owned subsidiary of Texas Capital Securities, Inc., was a control person
under the Texas Securities Act. The only evidence provided regarding TCSM is the 1997
annual report calling the fees paid to TCSM "management fees." The evidence shows
TCSM agreed to indemnify Texas Capital Securities, Inc., assume primary liability related
to certain settlement agreements with former customers, and pay certain legal fees. This
evidence does not show any form of power or influence over Texas Capital Securities, Inc.
or over Johnson, the Texas Capital Securities, Inc. broker who arranged for the sale of the
Titan stock. Buckley's affidavit states TCSM has no responsibility to supervise or otherwise
monitor any securities salesmen at Texas Capital Securities, Inc. Appellees failed to
produce sufficient evidence to prove as a matter of law that TCSM was a control person
for its parent company, Texas Capital Securities, Inc., and evidence presented by
Appellants raises genuine issues of material fact regarding this issue. The trial court erred
in holding TCSM was a control person of Texas Capital Securities, Inc.

 Because we find the trial court erred in granting summary judgment against
Appellants, we need not address Appellants' remaining points. 

 We reverse the summary judgment and remand the case to the trial court for further
proceedings. 


 Donald R. Ross

 Justice


Date Submitted: May 30, 2002

Date Decided: June 19, 2002


Publish

 
1. Tex. Rev. Civ. Stat. Ann. art. 581-1, et seq. (Vernon 1964 & Supp. 2002).
2. The Act defines "person" to include a corporation. Tex. Rev. Civ. Stat. Ann. art.
581-4(B) (Vernon Supp. 2002).
3. Although in Busse v. Pac. Cattle Feeding Fund #1, 896 S.W.2d 807, 815 (Tex.
App.-Texarkana 1995, writ denied), we found Busse, who was a majority shareholder and
a director, to be a control person, we do not construe this case to mean evidence solely
of status creates a prima facie showing of control person. 





 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00230-CR

                                                ______________________________

 

 

                                    JAMES BLAKE SPINKS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 1021437

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            James Blake Spinks evening of
drinking at the Texas Lounge in Sulphur Springs,
Texas was the genesis of the events causing the death of a fellow patron of the
Lounge, twenty-one-year-old Nathan Paul Spataro.  After Spinks alcoholic indulgence and
despite being warned that he was too drunk to drive, Spinks left the bar at the
midnight closing time and drove away in his vehicle.  On a dark road leading from the Lounge, his
vehicle collided violently with a large object, shattering the windshield.  Spinks maintained that he did not call the
police because he said that he believed that his vehicle had struck a deer.  Tragically for him and for Spataro,
the object which Spinks had struck was Spataro, who
was killed instantly.  After a jury
convicted Spinks of an accident involving personal injury or death,[1] he was sentenced to ten
years imprisonment and was ordered to pay a $10,000.00 fine.  On appeal, Spinks maintains that the evidence
is insufficient to support the judgment, and argues that the trial court erred
in admitting statements made by Spinks prior to Miranda[2]
Warnings and without audio recording. 
Because the evidence is sufficient to support the conviction, and Spinks
brief is inadequate to preserve the second issue for our review, we affirm the
trial courts judgment. 

I.          Sufficient
Evidence Supported Spinks Conviction 

            Doris Evelyn Gray met Spinks at
about 4:30 on the afternoon of the accident when she went to visit her
daughter, Juanita Joyce Gray, who was working at the Lounge.  Spinks was drinking Crown with a splash of
Coke, and he remained at the Lounge for the remainder of the evening and a
good portion of the night.  Dudley
Calhoun, karaoke host at the Texas Lounge, testified that Spataro
joined Spinks at the establishment. 
Security guard Don McKenzie described Spinks as obviously intoxicated
and warned him not to drive his vehicle. 
Spinks ignored the warning and drove his vehicle, shortly thereafter
running down Spataro with it, killing Spataro instantly.  

            Darrell Edwards also left the Texas
Lounge at approximately midnight and [w]ent straight
over to Burtons, across the road.  Edwards
and a friend remained at that local eatery for two hours.  According to recordings retrieved from video
surveillance cameras, Spinks arrived at Burtons at 1:25 a.m. where, Edwards
testified, Spinks ordered a burger to go, burger and fries, and he stood up
there and played a little, old quarter game for a few minutes and, you know,
just messed around for about an hour. 
As Edwards was leaving the establishment a few minutes after 2:00, he
saw Spinks car there in a handicapped parking lot and noticed the windshield
was busted.  Spinks came outside and
told Edwards that he had hit a deer while driving.  The video surveillance recording revealed
that Spinks remained at Burtons until 2:21 a.m.  

            At 2:47 a.m., Doris was visiting
with Juanita when Juanita received a telephone call from Spinks.  Doris was able to overhear the telephone
conversation between Spinks and Juanita and testified that Spinks had said that
theres been some problems and I need you to hide me out.  Juanita testified that Spinks freaked out
and told her during the telephone conversation that he had hit someone.  At the end of the conversation, Doris and
Juanita went down the road to look for someone that [Spinks] had supposedly
hit.  En route to the location of the
accident, Juanita called the police.  

            Doris and Juanita saw no signs of an
accident during their initial search and, believing that Spinks was playing a
trick on them, began to return home.  On
the way home, they saw Spinks walking down the road, but decided to drive
past him.  Juanita received another
telephone call from Spinks, wherein she expressed her negative opinion of the
joke she believed was being played. 
Spinks responded, I hit somebody. 
Come look at my car.  Doris and
Juanita met him up where his car was and saw that the windshield was bashed
in completely.  Doris went on to relate
that Spinks was extremely upset.  He had
said he had hit someone and he didnt want to go back to jail.  Doris testified to the following conversation
with Spinks:

            I went back to the car, to the back
of the car where he was, and I said, . . .             Where
did you hit this person? 

            And he says, On the road.

            And I said, Well, did you stop?

            No, I -- I didnt

            And I said, Okay this person is
hurt.  Youve hit someone, and hes
hurt.            I
want you to sit right there, and dont you get up, dont you move. . . .

            . . . .

            . . . And as we were leaving he
looked up at me, and he said, Im not going back to jail.

 

In
hindsight, Juanita believed that when they had seen Spinks walking down the
road, he had been looking for the person he had struck with his car.  As Doris and Juanita started slowly going
down the service road, they saw a a flip-flop, a pair of glasses and a hat,
and we stopped.[3]  The two exited their vehicle and began
searching the dark road using illumination from their cell phones and Juanita
discovered Spataros lifeless body.  Although Spataro was
wearing a long-sleeved black T-shirt and dark blue jeans, Juanita testified
that she had no difficulty spotting the body once she was off the road because
I was looking for somebody, and he was on a bed of rocks.  She also stated that the tall grass in which
the body was found did not conceal it from view. 

            City of Sulphur
Springs Police Lieutenant Jason Ricketson was
dispatched to the scene of the accident at 3:06 a.m.  He was met by Juanita and Doris, who had
located Spataro in the actual bar ditch, which
sustained a growth of grass 12 to 16 inches high.  Ricketson described
the area as fairly dark.  He opined
that when Spataro was hit, he went up on top of the
vehicle and onto the windshield.  Spataro had died instantaneously and didnt appear to have
any signs of life.  J. K. Townsend-Parchman,
M.D., an employee of the Dallas County Medical Examiner who conducted the
autopsy report, testified that as soon as he [Spataro]
got that very large amount of force applied to his head, he was, for all
intents and purposes, gone.  Townsend-Parchman indicated that there was no medical care that
could have been given to Spataro after the trauma
that may have kept him alive. 

            At the same time Ricketson
was sent to the scene of the accident, Sulphur
Springs police officer Lonnie Taylor was dispatched to the Lounge parking
lot.  Spinks returned to the accident scene,
approached Taylor and stated, I didnt see the guy walking down the middle of
the road, and, I knew I hit something, but I didnt know what it was.  Taylor saw the vehicle had quite a bit of
damage, even on the windshield.  Taylor
testified Spinks made the following statement after the Miranda warning:

[Spinks]
advised me he would speak to me and began telling me that he stopped his
vehicle and looked around after he hit something.  [Spinks] informed me that he was traveling
down East Industrial when he hit something. 
[Spinks] told me that he did not know what he hit, so he stopped the
vehicle and got out and looked around. 
[Spinks] advised that he did not see anything so he got back into the
vehicle and drove to Burtons Family Restaurant to pick up some food and
returned back to the Texas Lounge. 
[Spinks] then informed me that he went back to the accident site where
he looked around again and did not find what he hit.

 

            Taylor inspected the vehicle,
noticed there was blood and hair on the windshield, almost half of which had been
completely shattered.  After conducting
field sobriety tests, Taylor believed that Spinks was intoxicated and
transported him to the Hopkins County Memorial Hospital, where a blood sample
was taken from Spinks.  Spinks blood
alcohol concentration was .13.  Under
Texas law, a person is intoxicated if he has a blood-alcohol concentration of
.08 or more.  Tex. Penal Code Ann. § 49.01(2)(B) (West 2011). 

            Spinks believes this evidence was
legally insufficient to sustain his conviction for accident involving personal
injury or death.  In reviewing the legal
sufficiency of the evidence, we review all the evidence in the light most
favorable to the jurys verdict to determine whether any rational jury could
have found the essential elements of the charged offense.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd)
(citing Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007)).  Our
rigorous legal sufficiency review focuses on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819).

            Legal sufficiency of the evidence is
measured by the elements of the offense as defined by a hypothetically-correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically-correct jury charge sets
out the law, is authorized by the indictment, does not unnecessarily increase
the States burden of proof or unnecessarily restrict the States theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Id.

            Section 550.021(a) sets out the
following requirements:

            (a)        The
operator of a vehicle involved in an accident resulting in injury to or death
of a person shall:

                        (1)        immediately stop the vehicle at the
scene of the accident or as close to the scene as possible;

                        (2)        immediately return to the scene of the
accident if the vehicle is not stopped at the scene of the accident; and

                        (3)        remain at the scene of the accident
until the operator complies with the requirements of Section 550.023.[4]

 

Tex. Transp. Code Ann.
§ 550.021(a).  These requirements are
called failing to stop, failing to return, and failing to remain, and are
viewed as alternate methods of committing the same offense.  Huffman
v. State, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008).  The elements of the offense of accident
involving personal injury or death are:  (1)
an operator of a motor vehicle, (2) involved in an accident, (3) resulting
in injury or death of any person, and (4) intentionally and knowingly (5) fails
to stop or render reasonable assistance. 
See Henry v. State, No. 06-11-00010-CR,
2011 WL 3890736, at *2 (Tex. App.Texarkana Sept. 16, 2011, no pet.) (mem. op., not designated for publication)[5]
(citing McCown
v. State, 192 S.W.3d 158, 162 (Tex. App.Fort Worth 2006, pet. refd); Goar v. State, 68
S.W.3d 269, 272 (Tex. App.Houston [14th Dist.] 2002, pet. refd)).


            Section 550.021 of the Texas
Transportation Code defines the offense of accident involving personal injury
or death, and provides that the operator of a vehicle involved in an accident
resulting in injury or death commits an offense if the person does not stop or does not comply with the requirements
of this section.  Tex. Transp. Code Ann. § 550.021(c)
(emphasis added).  There is no dispute in
this case that Spinks operated the vehicle involved in this accident which
caused Spataros death.  Thus, the contention is whether he
intentionally or knowingly failed to stop, failed to return, or failed to
remain and render aid in accordance with Section 550.023.  Spinks recites evidence that the road was
dark and that testimony shows he tried to look for what he had hit.  Because he could not find anyone or anything,
the brief argues he should not be charged with having failed to remain and
render aid.[6]  We focus on Spinks failure to stop.[7]  

            The culpable mental state for this
offense is that the accused had knowledge of the circumstances surrounding his
conduct, meaning he had knowledge that an accident occurred.  Henry,
2011 WL 3890736, at *3 (citing Goss v.
State, 582 S.W.2d 782, 785 (Tex. Crim. App. 1979) (establishing culpable
mental state for offense); Goar, 68 S.W.3d at 272). 
Intent or knowledge may be inferred from the acts, words, and conduct of
an accused at the time of an offense.  Hart v. State, 89 S.W.3d 61, 64 (Tex.
Crim. App. 2002).  Moreover, [t]here is
no requirement that an accused must have positive, subjective knowledge of the
nature or extent of injury resulting from the collision.  McCown, 192 S.W.3d at 162. 

            Spinks clearly knew he had collided
with a large object.  While he told
Edwards that he believed that he had struck a deer, in his telephone call to
Juanita that night, he identified the object he hit as a person.  Doris specifically testified that Spinks told
her he did not stop.[8]  Instead, Spinks went to a local eatery,
ordered a burger and fries, and played a video game before he confessed to
Juanita.  He then returned to the scene
of the accident and attempted, in a drunken state, to locate the person he had
stricken.  Juanita testified that she
could see the victims body when she got off the road and that the fairly
tall grass in the ditch where it laid did not conceal the body.  A reasonable jury could have determined that
had Spinks initially stopped his vehicle after striking Spataro,
he would have been able to see the body. 
In any event, the jury was free to believe Doris testimony of Spinks
admission to her. 

            We find the evidence legally
sufficient to show that Spinks, who operated a vehicle in an accident resulting
in Spataros death, knowingly failed to stop as
required by Section 550.021.  We overrule
this point of error.  

II.        Point
of Error Regarding Admission of Statements Is Inadequately Briefed

            Spinks argues that the trial court should
reverse and remand because statements made by Appellant prior to Miranda
Warnings and without audio recording were admitted at trial.  The entirety of Spinks application portion
of the briefing recites:

At
trial, the defense objected to statements made by Appellant 1) Appellant had
not been Mirandized, and 2) no audio was available on
the recording presented at trial.  No
corroborating evidence of the alleged statements at the time of arrest was
presented at trial.  No audio recording
of waiver of any rights or actual statements made were presented at trial.  No such recording was ever provided to
defense counsel.  No recording was
presented at trial by which voices could be identified[.]

 

(Record
citation omitted.) 

            Spinks fails to identify any
particular statement or statements of which he complains.  His only record citation refers to counsel
objecting to admission of a video recording which did not contain audio, an
objection that was later withdrawn.  The
only citation to authority presented is a citation to Article 38.22, Section
3(a) of the Texas Code of Criminal Procedure, which provides that [n]o oral or
sign language statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding,
unless, inter alia, an electronic recording, which may include motion picture,
video tape, or other visual recording is made of the statement and prior to
the statement but during the recording the accused is given the warning in
Subsection (a) of Section 2 above and the accused knowingly, intelligently, and
voluntarily waives any rights set out in the warning.  Tex. Code Crim. Proc. Ann. art.
38.22, § 3(a)(1), (2) (West 2005).  

            Rule 38.1(h) of the Texas Rules of
Appellate Procedure requires that a brief contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record.  Tex. R. App. P. 38.1(h); see
In re N.L.G., No. 06-06-00066-CV, 2006 WL 3626956, at *2 (Tex.
App.Texarkana Dec. 14, 2006, pet. denied) (mem. op.,
not designated for publication) (declining to comb through record where record
citation did not contain reference to allegedly overruled objection).  An inadequately briefed issue may be waived
on appeal.  McCarthy v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); Fredonia State Bank v. Gen. Am. Life Ins. Co.,
881 S.W.2d 279, 28485 (Tex. 1994) (discussing longstanding rule that point
may be waived due to inadequate briefing); Hooper
v. Smallwood, 270 S.W.3d 234 (Tex. App.Texarkana 2008, pet. denied).  From the briefing provided and citation to
the record included in the brief, we cannot discern the statements of which
Spinks complains, whether they were specifically objected to, and whether the
court allowed their admission.  The sole
reference to the record in Spinks brief on this point is to an objection which
was later withdrawn; accordingly, if there was once a valid objection raised to
something there, the objection was not preserved.  In addition to containing inadequate citation
to the record, no discussion of harm analysis was mentioned in the brief.  

            If a point of error is inadequately
briefed, we will not address it.  See Tex.
R. App. P. 38.1; Vuong v. State, 830 S.W.2d 929, 940 (Tex.
Crim. App. 1992).  This Court is not the
appellants advocate.  Although we have
an interest in a just adjudication, we also have an interest in remaining
impartial.  Ex parte Lowery, 840 S.W.2d 550, 552 n.1 (Tex. App.Dallas 1992), revd on other grounds, 867 S.W.2d 41 (Tex.
1993).  Thus, we will not brief Spinks
case for him.  Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); see Busby
v. State, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); Lawton v. State, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995), overruled on other grounds by Mosley v.
State, 983 S.W.2d 249 (Tex. Crim. App. 1998).  Finding Spinks brief inadequate as to this
point of error, we overrule it.  Castillo v. State, 810 S.W.2d 180, 182
n.1 (Tex. Crim. App. 1990) (finding argument inadequately briefed and refusing
to address it where defendant failed to identify part of record where issue was
preserved).[9]

III.       Conclusion


            We affirm the trial courts judgment. 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          November 14, 2011

Date
Decided:             December 2, 2011

 

Do Not
Publish

 











[1]The
title of Section 550.021 of the Texas Transportation Code, setting forth the
offense, is Accident Involving Personal Injury or Death, but this offense is
commonly referred to as failure to stop and render aid.  See
Tex. Transp. Code Ann. § 550.021 (West
2011).

 





[2]Miranda v. Arizona, 384 U.S. 436 (1966).





[3]Spataros Texas Longhorn hat, sunglasses, and flip-flop
were found in the roadway. 





[4]When
an accident results in personal injury or damage to a vehicle, the operator is
required to provide reasonable assistance to any person injured in the accident
if it is apparent that treatment is necessary. 
Tex. Transp. Code Ann. §
550.023 (West 2011).

 





[5]Although
the unpublished case has no precedential value, we may take guidance from it as
an aid in developing reasoning that may be employed.  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.Amarillo 2003, pet. refd).





[6]This argument was rejected by our sister court in Barnette v. State, No. 08-09-00147-CR, 2011 WL
486949, at *2 (Tex. App.El Paso Feb. 9, 2011, pet. refd)
(mem. op., not designated for publication) (although
Appellant testified that she stopped, looked outside her door, and did not see
anything, the jury could have found the stop insufficient, disregarded her
testimony, and rationally inferred that she knew she hit and killed another
person given the dead body found just minutes after the accident occurred)
(See footnote 5 regarding unpublished cases.). 

 





[7]The
indictment alleged Spinks knowingly le[ft] the scene of said accident and
failed to remain and render aid.  The
jury was charged in accordance with all three alternate means of committing the
offense.  

 





[8]Moreover,
in accident cases a stop does not mean a stop for an instant, enabling but a
cursory examination of the surroundings, but does mean a definite cessation of
movement for a sufficient length of time for a person of ordinary powers of
observation to fully understand the surroundings of the accident and to possess
himself of an accurate knowledge of the results of the accident.  Moore
v. State, 145 S.W.2d 887, 888 (Tex. Crim. App. 1940).





[9]After
combing through the record, which we are not required to do in light of the
inadequate briefing, we find statements of which Spinks might have
complained.  Assuming Spinks is complaining
of statements where he walked up to [an officer] and immediately said, I
didnt see the guy walking down the middle of the road. . . . I knew I hit
something, but I didnt know what it was, the record suggests these were
statements which were volunteered by Spinks at a time when he was not
undergoing custodial interrogation.  See Tex.
Code Crim. Proc. Ann. art. 38.22, § 5 (West 2005).  The record established that Miranda warnings were issued immediately
after these statements.