**Opinion issued April 17, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00850-CV

—————————————

### THADDEUS AND BONNIE SAMUEL, Appellants

### V.

### FEDERAL HOME LOAN MORTGAGE CORPORATION, CITIMORTGAGE, INC., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., Appellees

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2013-19366

## O P I N I O N

Thaddeus and Bonnie Samuel sue to set aside CitiMortgage, Inc.'s foreclosure on a residential property. In addition, the Samuels seek damages against CitiMortgage, Inc. ("CMI"), Mortgage Electronic Registration Systems,

Inc. ("MERS"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The Samuels brought two earlier suits in connection with their efforts to prevent or forestall foreclosure. The first was dismissed without prejudice; the second was decided by a final summary judgment against the Samuels. In this third lawsuit, the trial court granted summary judgment under the doctrines of res judicata and collateral estoppel. On appeal, the Samuels contend that neither res judicata nor collateral estoppel bars their suit against CMI, MERS, and Freddie Mac. Finding no error, we affirm.

## Background

In December 2008, the Samuels purchased real property in Cypress, Texas. In connection with the transaction, the Samuels executed a promissory note payable to CMC Home Lending and a deed of trust that granted a lien against the property. The deed of trust named MERS as a beneficiary and as a nominee for CMC and CMC's successors and assigns. In October 2010, MERS assigned the mortgage to CMI and recorded the assignment in the Harris County public records. The Samuels fell behind on their mortgage payments, and foreclosure of the lien threatened. In April 2011, the Samuels sued CMI to forestall foreclosure. The trial court dismissed their suit without prejudice.

*The October 2011 lawsuit*

In October 2011, the Samuels again sued CMI, alleging that it lacked authority to foreclose on the property because it was not a mortgagee and did not hold the promissory note. While the suit was pending, CMI foreclosed on the property and sold it to Freddie Mac. CMI moved for summary judgment, proffering the deed of trust and the assignment of the mortgage from MERS to CMI in support of its motion. In December 2012, the trial court granted CMI's summary judgment. In February 2013, Freddie Mac obtained a judgment by default to recover possession of the property.

*Samuels' current lawsuit*

In April 2013, the Samuels again sued CMI for wrongful foreclosure, this time adding MERS and Freddie Mac as defendants. The Samuels allege in the current suit that (1) CMI lacked the authority to foreclose on the property; and (2) the assignment of the mortgage from MERS to CMI was fraudulent.

The Samuels specifically allege, first, that Nate Blackstun, the signor of the October 2010 document assigning the mortgage from MERS to CMI, was an employee of CMI, not MERS, at the time of the assignment. This allegation relies on a March 2008 "Appointment of Substitute Trustee" document that Blackstun signed as an employee of CMI. Second, the Samuels allege that the U.S. Comptroller of the Currency, in an April 2011 consent order, found that Citibank

N.A., in Las Vegas, Nevada had engaged in unsafe or unsound practices in its mortgage servicing and foreclosure proceedings. Third, the Samuels note that, in April 2013, Citibank mailed the Samuels a check for $300 in connection with an agreement between CitiBank, the U.S. Comptroller of the Currency, and the Board of Governors of the Federal Reserve System. Citibank included a document with the check that states: "This payment does not mean that you necessarily suffered financial injury or harm."

**Discussion**

## I. Standard of review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, like the one filed in this case, the movant must establish that no genuine issue of material fact exists and that the movant is thus entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

When, as here, "a trial court's order granting summary judgment does not specify the grounds relied upon, [we] affirm [the] summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). If the appellant fails to negate every possible ground upon which the summary judgment may have been granted, an appellate court must uphold the judgment. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## II. Res judicata

*CMI*

The doctrine of res judicata, or claim preclusion, bars a second action by parties, and those in privity with them, on matters actually litigated in a previous suit, as well as claims that could have been litigated in the prior suit through the exercise of diligence. *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2007) (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992)). Res judicata is an affirmative defense. TEX. R. CIV. P. 94. A defendant must prove: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action grounded on the same claims as those raised or that could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652

(Tex. 1996). The doctrine's purposes are to prevent a defendant from being "twice vexed for the same acts, and to achieve judicial economy by precluding those who have had a fair trial from relitigating claims." *Id.* at 653 (citing *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)).

Texas courts follow the transactional approach to res judicata. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992). Under this approach, we examine the factual bases, not the legal theories, presented in the cases. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied). The main concern is whether the cases share the same nucleus of operative facts. *Id.* In determining whether the facts arose out of a single transaction, we consider whether the facts are related in time, space, origin, or motivation, and whether they form a convenient unit for trial. *Barr*, 837 S.W.2d at 631 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

In the October 2011 suit, CMI obtained a final summary judgment against the Samuels on the merits by a court of competent jurisdiction. In that suit, the Samuels could have alleged that the earlier assignment from MERS to CMI was fraudulent. CMI had proffered the assignment in support of its summary–judgment motion, and the assignment was recorded in the Harris County public records before the Samuels initiated the October 2011 lawsuit. The Samuels,

through the exercise of diligence, could have discovered the March 2008 "Appointment of Substitute Trustee" document and the April 2011 consent order, because both documents predate the Samuels' October 2011 suit.

The April 2013 check from CitiBank is the only matter that the Samuels could not have discovered before the October 2011 suit. But, contrary to the Samuels' contention, this evidence does not raise a new factual allegation in support of their wrongful–foreclosure claim. The check, moreover, is not an admission of liability. The document attached to the check states: "This payment does not mean that you necessarily suffered financial injury or harm." The Samuels have not pleaded a cognizable claim that they could not have raised in their October 2011 suit. *See Hallco Tex.*, 221 S.W.3d at 58.

Relying on *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, the Samuels contend that res judicata does not bar their current suit because they pleaded new claims. 387 S.W.3d 74, 89 n.18 (Tex. App.—Houston [14th Dist.] 2012, no pet.). *Citizens*, however, is distinguishable. There, our sister court held that res judicata did not bar a second suit based on a fraudulent transfer of assets because the operative facts differed from a first suit based on a breach of contract. *Id.* The *Citizens* trial court had severed the plaintiff's fraudulent–transfer–of–assets claim from its breach–of–contract claim. *Id.* at 79. Here, in contrast, the Samuels have alleged the same operative facts: (1) whether MERS' assignment was valid; and

(2) whether CMI lacked authority to foreclose on the property. Because CMI was a party to the October 2011 suit and the claims alleged both then and in this suit arise from the same nucleus of operative facts, we hold that res judicata bars the Samuels' current suit against CMI. *See Amstadt*, 919 S.W.2d at 652; *Pinebrook Props.*, 77 S.W.3d at 496.

*MERS and Freddie Mac*

Res judicata applies when a party in the second suit is in privity with a party in the first suit. *Amstadt*, 919 S.W.2d at 652; *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.). Privity connotes those who are so connected with a party to the judgment in the law such that the party to the judgment represented the same legal right. *Gaughan v. Spires Counsel of Co–Owners*, 870 S.W.2d 552, 555 (Tex. App.—Houston [1st Dist.] 1993, no writ). A party can be in privity in at least three ways: (1) it can control an action even if it is not a party to it; (2) its interests can be represented by a party to the action; or (3) it can be a successor–in–interest, deriving its claim through a party to the prior action. *Amstadt*, 919 S.W.2d at 653. Privity is not established by the fact that a party happens to be interested in the same question or in proving the same facts. *Zimmerman*, 160 S.W.3d at 703.

In the October 2011 suit, the Samuels alleged that CMI lacked authority to foreclose on the property. CMI produced the agreement assigning the mortgage

from MERS to CMI as evidence of its authority to foreclose. In this way, CMI defended MERS' right to assign the mortgage to it. CMI also defended its authority to sell the property to Freddie Mac at the foreclosure sale. In this way, CMI represented Freddie Mac's right to purchase the property against an attack that CMI, as the seller, lacked authority to transfer the property. Because CMI represented the legal rights of MERS and Freddie Mac on the issues alleged against them in this suit, as either a predecessor or a successor in CMI's interest in the property, MERS and Freddie Mac established that they were in privity with CMI. *See Gaughan*, 870 S.W.2d at 555.

Relying on *Reliance Capital, Inc. v. G.R. Hmaidan, Inc.*, the Samuels contend that MERS did not conclusively establish privity between itself and CMI, a party to the first suit, because it did not show a commonality of ownership between the entities. No. 14-07-01059-CV, 2009 WL 1325441, at *3–4 (Tex. App.—Houston [14th Dist.] May 14, 2009, pet. denied) (mem. op.). There, the court of appeals held that three parties who possessed a "high degree of commonality of shareholders, directors, and officers" could be in privity. *Id.* The *Hmaidan* court, however, did not hold that such a relationship was necessary to establish privity, but merely that it could in an appropriate situation. *Id.* at *4. In this case, it is not the commonality of corporate ownership that establishes privity, but rather it is the identity of interest held by CMI and MERS, as assignor to CMI,

in the chain of title to the disputed property. *See Amstadt*, 919 S.W.2d at 653 (holding that privity existed where plaintiffs in second suit were successors–in–interest who derived their rights in property from plaintiffs in first suit).

The Samuels also rely on *Torello v. Mortgage Electronic Registration System, Inc.*, contending that Freddie Mac did not conclusively establish privity. No. 3:12-CV-3726-O-BH, 2013 WL 3289526 (N.D. Tex. June 28, 2013). In *Torello*, the federal district court denied the Federal National Mortgage Association (Fannie Mae)'s motion to dismiss the pro se plaintiff's suit for failure to state a claim based on res judicata because the plaintiff's pleadings were ambiguous concerning Fannie Mae's status as successor–in–interest to the bank–loan servicer that was a defendant in plaintiff's prior wrongful–foreclosure suit. *Id.* at *9–10 (evaluating motion under FED. R. CIV. P. 12(b)(6)). In contrast, the uncontroverted summary–judgment evidence here shows that CMI conveyed the property to Freddie Mac who, as the successor–in–title, was in privity with CMI to the extent necessary to defend its title to the property. *See Gaughan*, 870 S.W.2d at 555. We hold that res judicata bars the Samuels' current suit against MERS and Freddie Mac. *See Amstadt*, 919 S.W.2d at 653.

## Conclusion

Because res judicata bars the Samuels' current suit, the trial court properly granted summary judgment. Accordingly, we affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.