**Reversed in Part, Affirmed in Part, and Remanded. Opinion Filed July 7, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-01579-CV**

## DAVID BAGWELL, INDIVIDUALLY AND AS TRUSTEE OF THE DAVID S. BAGWELL TRUST, AND MARILYN D. GARNER, CHAPTER 7 TRUSTEE OF THE ESTATE OF THE DAVID BAGWELL COMPANY AND TRUSTEE OF THE ESTATE OF EVERMORE COMMUNITIES, LTD., Appellants
## V.
## BBVA COMPASS AND SAM MEADE, Appellees

On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-00991

### MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Stoddart

This is an appeal from a summary judgment in a fraud suit brought by guarantors against the lender and its employee. The lender moved for summary judgment on its affirmative defenses of the statute of frauds, res judicata, collateral estoppel, estoppel, and the economic loss rule. The trial court granted the motion without specifying the grounds for the ruling. We conclude that the statute of frauds bars the fraud claim to the extent appellants seek to recover benefit-of-the-bargain damages, but not to the extent they seek to recover out-of-pocket damages. We also conclude the lender's remaining affirmative defenses do not support the summary judgment on the fraud claim. Accordingly, we reverse the summary judgment to the

extent appellants seek to recover out-of-pocket damages on their fraud claim and affirm the summary judgment in all other respects. We remand this cause for further proceedings.

David Bagwell is a real estate developer and was the president of The David Bagwell Company (DBC). In 2006, Bagwell formed three limited partnerships to develop real estate projects. These partnerships collectively borrowed nearly $11 million from Texas State Bank under three promissory notes (the Notes). The Notes were secured by the real estate owned by the borrowers and were guaranteed by Bagwell, individually and as trustee of a trust, DBC, and Evermore Communities, Ltd. (Evermore), under written guaranty agreements (the Guarantees). Texas State Bank was later acquired by BBVA Compass (Compass) and Compass became the owner and holder of the Notes and the Guarantees.

The Notes matured in February 2008, but Compass entered into a written extension agreement extending the maturity to May 1, 2008, and a second written extension agreement extending the Notes to December 1, 2009. In August 2009, Sam Meade, an executive vice president with Compass, became the loan officer for the Notes and took over negotiations with Bagwell for another extension of the maturity date. According to Bagwell, Meade repeatedly assured him that Compass would extend the Notes. (We refer to this as the Extension Representation.) Bagwell alleged he "acted in reliance on these promises." Bagwell also alleged that Meade represented to him that Compass was not attempting to sell or assign the Notes to a third party (the No-Assignment Representation).

No written agreement to extend the Notes was executed and they matured by the terms of the last extension on December 1, 2009. In January 2010, Compass sold the Notes and Guarantees to another developer, Toll Brothers, Inc., which then assigned them to The Ridge at Alta Vista Investments I, LLC (RAV). RAV made demand on the matured Notes and

Guarantees in February 2010, and filed suit on the Guarantees in April 2010 (the RAV Litigation). RAV foreclosed on the real property securing the Notes and sought to recover the deficiency from the guarantors. The guarantors filed a counterclaim against RAV and a third-party petition against Compass and Meade, but the guarantors never served Compass or Meade. A final summary judgment against the guarantors in the RAV Litigation was rendered in April 2012. DBC and Evermore filed for bankruptcy protection after that judgment. This Court affirmed the judgment in the RAV Litigation on appeal. *See Bagwell v. Ridge at Alta Vista Invs. I, LLC*, 440 S.W.3d 287 (Tex. App.—Dallas 2014, pet. denied).

In January 2014, Bagwell brought this lawsuit against Compass and Meade alleging claims for fraud, fraud in a real estate transaction, and fraud by nondisclosure. Bagwell alleged he relied on the Extension Representation and the No-Assignment Representation and suffered "significant damages." His live pleading stated he seeks monetary relief over $1,000,000.00. Marilyn D. Garner, Chapter 7 Trustee for DBC and Evermore (the Trustee), intervened as a plaintiff in this suit and raised a claim for promissory estoppel in addition to the fraud and fraud by nondisclosure claims.

Compass and Meade filed a traditional motion for summary judgment on the following defenses: (1) statute of frauds; (2) res judicata and collateral estoppel; (3) estoppel; and (4) the economic loss rule. The trial court granted the motion for summary judgment without specifying the grounds for its ruling, and rendered a take-nothing judgment against Bagwell and the Trustee.

Bagwell and the Trustee raise the following issues on appeal: (1) res judicata does not apply because Compass and Meade were not parties to the prior litigation and not in privity with a party; (2) collateral estoppel does not apply because the fraud claim was not litigated in the prior lawsuit and was not essential to the judgment; (3) the statute of frauds does not bar the fraud claim because appellants do not rely on an oral agreement and do not seek benefit-of-the-

bargain damages; (4) the estoppel defense, based on a contractual merger clause, does not bar a fraud claim arising out of future conduct; and (5) the economic loss rule does not bar a fraud claim that does not seek to recover the economic loss arising from a contract. In addition, the Trustee argues the promissory estoppel claim is not barred by the defenses raised in the motion for summary judgment.[1]

Except where necessary to distinguish the parties, we refer to appellants collectively as Bagwell and appellees collectively as Compass.

### STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

For a defendant to prevail on a traditional motion for summary judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). "When a movant meets that burden of establishing each element of

---

[1] The Trustee's issues are: (1) res judicata and collateral estoppel do not apply because the fraud claim was neither actually litigated in the prior suit nor essential to the judgment; (2) appellants are not estopped by the disclaimer in the loan documents; (3) the economic loss rule does not apply; (4) the statute of frauds does not bar a fraud claim seeking reliance damages; and (5) the Trustee's promissory estoppel claim is not barred by the defenses.

the claim or defense on which it seeks summary judgment, the burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014); *see also AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex. App.—Dallas 2010, no pet.).

In this case, Compass did not seek to disprove the elements of appellants' claims and did not file a no-evidence motion for summary judgment. As the movant on a traditional motion for summary judgment on its affirmative defenses, Compass had the burden to conclusively prove all the elements of those defenses.

### ANALYSIS

On appeal, Bagwell addresses only his fraud claim. The Trustee addresses the fraud claim and the promissory estoppel claim.

The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)).

The elements of a promissory estoppel claim are (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial detrimental reliance by the promisee. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 480 (Tex. 1981). To show detrimental reliance, the plaintiff must demonstrate that he materially changed his position in reliance on the promise. *See English*, 660

–5–

S.W.2d at 524; *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146–47 (Tex. App.—Dallas 2013, no pet.) (continuing to deposit money in operating account was not material detrimental change in plaintiff's position as result of alleged oral promise to renew and extend loan agreement). Promissory estoppel is also recognized as an equitable exception to the traditional statute of frauds. It applies where an oral agreement is barred by the statute, but there is an additional promise to sign an existing writing containing the terms of the oral agreement and that writing would satisfy the statute of frauds. *See Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972).

## A. Statute of Frauds

Bagwell's third issue and the Trustee's fourth issue challenge the summary judgment on the statute of frauds affirmative defense.

Compass relies on the statute of frauds applicable to loan agreements involving financial institutions. *See* TEX. BUS. & COM. CODE ANN. § 26.02. Under this statute, any loan agreement involving an amount in excess of $50,000, "is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." *Id*. § 26.02(b).[2] "Loan agreement" is broadly defined to include

> one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation. . . .

*Id.* § 26.02(a)(2). Financial institutions are state and federally charted banks and similar entities.

---

[2] The loan documents in this case contain a conspicuous notice provision substantially in the form required by section 26.02(e). *See id.* § 26.02(e); *id.* § 26.02(f) (providing that if the subsection (e) notice is not given this section does not apply to the loan agreement). We discuss this notice provision in detail in the estoppel section below.

*Id.* § 26.02(a)(1).[3]   The parties do not belabor the issue, but we agree the Extension Representation and the No-Assignment Representation, considered as promises, fall within the broad definition of "loan agreement" in section 26.02(a)(2).  *Id.* § 26.02(a)(2) (one or more promises by which a "financial institution loans or delays repayment of or agrees to loan or delay repayment of money . . . or to otherwise extend credit or make a financial accommodation").

The supreme court recognizes that allegations of fraud do not preclude application of the statute of frauds.  The court has

> rejected attempts to "use a fraud claim essentially to enforce a contract the Statute makes unenforceable" as an improper circumvention of the statute's purpose. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); *see also Nagle v. Nagle*, 633 S.W.2d 796, 801 (Tex. 1982).  Thus, we have held that "the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds." *Haase*, 62 S.W.3d at 799.

*Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 769 (Tex. 2007) (per curiam); *accord Lam v. Phuong Nguyen*, 335 S.W.3d 786, 790 (Tex. App.—Dallas 2011, pet. denied) ("The Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds.").

Compass contends that in order to prove the elements of his fraud claim, Bagwell must rely upon an alleged oral agreement that is barred by the statute of frauds for loan agreements. Compass asserts that the fraud claim arises from the alleged oral agreement to extend the Notes, and is barred by the statute of frauds because it depends on an oral agreement involving a loan agreement for more than $50,000.

In contrast, Bagwell argues that his "fraud claims *do not* rely on the existence of an oral

---

[3] Bagwell does not argue on appeal that Compass is not a financial institution within the meaning of this definition.

agreement of any kind—or seek damages for enforcement of any such non-existent agreement[.]" He contends his fraud claim centers on the Extension and No-Assignment Representations, "representations that never amounted to any full-fledged 'agreement' relating to those notes." His brief states he never claimed he reached an agreement with Compass "that would prevent a sale or transfer of the notes" or that Compass "actually *agreed* to grant an extension" of the Notes.

Despite these arguments, Bagwell's affidavit and live pleading indicate he relied on alleged oral promises. In his affidavit, Bagwell testified that Compass and Meade repeatedly assured him the Notes would be extended and he "acted in reliance on these promises." He stated that "Meade promised that the Notes would be extended for at least 60 days, upon the same terms as the Second Modification[.]" Bagwell also testified that Compass and Meade denied they were in the process of selling the Notes, but then sold them to RAV, "rather than extending the terms of the Notes, as Meade promised." "BBVA Compass and Meade caused sufficient delay so that [Bagwell and his companies] would believe the Notes were in the renewal and extension process, consistent with Defendants' promises and past course of action." Bagwell stated he inquired about a rumored sale of the Notes in January 2010, and Compass "denied that the bank intended to sell or transfer the Notes, rather than renew the loans, as promised." Bagwell and the Trustee's live pleadings mirror these statements.

Bagwell also described Meade's statements as representations. He testified he relied on the Extension and No-Assignment Representations: "During this process, I refrained from arranging for other financing to retire the Notes, which I certainly would not have done . . . had I known that BBVA Compass was secretly selling the Notes to a competitor." Bagwell was concerned about the passage of time in renewing the Notes, but "relied upon Meade's repeated assurances of extension of the Notes." He testified that although they "could have re-financed or

retired the Notes with another lender or capital source, we relied upon Meade's and BBVA Compass' representations and inducements in not pursuing such alternate capital."

Bagwell's pleading and evidence of damages is not specific. He testified that based on Compass's misrepresentations, "The David Bagwell Company, Evermore Communities, Ltd. and I suffered significant damages." His petition prayed for actual and special damages in an amount within the jurisdictional limits of the trial court.

Thus, Bagwell's pleading indicates an attempt to enforce an oral promise to extend the Notes or a promise not to assign the Notes. To that extent, the fraud claim is barred by the statute of frauds contained in section 26.02:

> If in the face of the Statute of Frauds we permit Glazner's fraud claim to the extent he seeks to recover the benefit of the unenforceable bargain, we deprive the Statute of any effect. The Statute exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties. But that purpose is frustrated and the Statute easily circumvented if a party can use a fraud claim essentially to enforce a contract the Statute makes unenforceable. We therefore hold that the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds.

*Haase*, 62 S.W.3d at 799 (footnote omitted).

Bagwell contends, however, that he seeks to recover only damages he incurred in reliance on the representations. In *Haase*, the supreme court recognized that the statute of frauds does not bar fraud claims for out-of-pocket damages incurred in reliance on oral representations:

> But Glazner's fraud claim may not contravene the Statute of Frauds to the extent that he seeks out-of-pocket damages incurred in relying upon Haase's alleged misrepresentations. With respect to such damages, Glazner is not attempting to enforce the otherwise unenforceable contract. Relying on Glazner's deposition testimony, Haase argues that Glazner's only alleged damages are the lost profits from the franchise he never secured. But Glazner's petition is not so limited. Rather, Glazner's petition alleges that he made "efforts concerning demographics, decor, potential profits, and location." And the summary judgment record reveals that Glazner hired a surveyor and entered into an earnest-money contract for a site on which he proposed to build his restaurant. These kinds of damages are not part of the benefit of any alleged bargain between the parties.

–9–

*Haase*, 62 S.W.3d at 799–800 (footnote omitted).

In these types of cases, the viability of the fraud claim depends on the nature of the damages sought:

> Thus, if the measure of damages Sonnichsen seeks for fraud are the benefit-of-the-bargain damages he sought to recover for breach of contract, his fraud claim also fails. The viability of Sonnichsen's fraud claim depends upon the nature of the damages he seeks to recover. This analysis is consistent with our holdings that focus the legal treatment of claims on the true nature of disputes rather than allow artful pleading to morph contract claims into fraud causes of action to gain favorable redress under the law.

*Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007) (per curiam).

Bagwell admits in his brief that his petition "does not specify the precise measure of damages he seeks to recover." We agree. The allegations are minimal and conclusory and provide no factual detail explaining what out-of-pocket damages he suffered by relying on the Extension and No-Assignment Representations. Nor does his affidavit provide any detail of potential damages he may have incurred. Bagwell alleged merely that he relied on the representations by refraining from refinancing the Notes or obtaining additional capital to repay them. He asserts on appeal that he suffered damages because the Notes and Guarantees were assigned to RAV when Compass represented that it was not trying to sell the Notes. Bagwell appears to argue he was injured when RAV foreclosed on the properties and sued to collect on the Guarantees, but does not explain how that injury would be any different if, as he contends, there was no agreement to extend the Notes and Compass foreclosed on the properties and collected on the Guarantees.

Compass, as the summary judgment movement on its statute of frauds affirmative defense, had the burden of establishing that the only damages appellants sought and could recover were benefit-of-the-bargain damages. Compass did not submit any summary judgment evidence establishing that the damages sought were only benefit-of-the-bargain damages. *See*

–10–

*Lam*, 335 S.W.3d at 791–92; *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 778–79 (Tex. App.—Dallas 2005, pet. denied). Compass did not file special exceptions to appellants' pleadings seeking more specificity in the damage allegations. *See* TEX. R. CIV. P. 47, 91. Nor did Compass file a no-evidence motion for summary judgment asserting there is no evidence of out-of-pocket damages. *See Sonnichsen*, 221 S.W.3d at 634; *Haase*, 62 S.W.3d at 800; *Transcon. Realty Inv'rs, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 646-47 (Tex. App.—Dallas 2009, no pet.); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 162–63 (Tex. App.— Dallas 2007, pet. denied); *James L. Gang & Assoc., Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 442–43 (Tex. App.—Dallas 2006, no pet.).

The same situation arose in the *Haase* decision:

> Haase did not move for summary judgment on the grounds that there was no evidence of damages aside from lost profits. Nor did he move for summary judgment on the grounds that there was no evidence of reasonable reliance. Consequently, under the circumstances presented here, Glazner's fraud claim may survive Haase's motion for summary judgment to the extent that he seeks to recover these kinds of out-of-pocket damages.

*Haase*, 62 S.W.3d at 800 (footnote omitted). As a result, the court rendered a take nothing judgment on the fraud claim for benefit-of-the-bargain damages, but affirmed a remand of the fraud claim for out-of-pocket damages. *Id.*

Although there is no summary judgment evidence here of any actual expenditures, like hiring a surveyor in *Haase*, made by appellants in reliance on the alleged misrepresentations, Compass did not attempt to prove there were no such out-of-pocket damages. Because of the lack of specificity in the live pleadings regarding the nature of the damages claimed and the possibility that Bagwell and the Trustee may be able to allege out-of-pocket damages incurred in reliance on the alleged misrepresentations, we cannot conclude Compass conclusively established its statute of frauds affirmative defense as to those damages. However, to the extent that appellants seek to recover the benefit of an unenforceable oral contract to extend the

–11–

maturity of the Notes or to preclude assignment of the Notes and Guarantees, Compass met its burden and the trial court correctly granted summary judgment.

We overrule Bagwell's third and the Trustee's fourth issues to the extent they seek to recover benefit-of-the-bargain damages. We sustain those issues to the extent appellants seek to recover out-of-pocket damages for reliance on the alleged misrepresentations.

## B. Res Judicata and Collateral Estoppel

Bagwell's first and second issues and the Trustee's first issue challenge the summary judgment on the res judicata and collateral estoppel defenses. Compass asserted in its motion for summary judgment that the final judgment in the RAV Litigation barred the claims in this suit. In support, Compass submitted Bagwell's counterclaim and third-party petition and the final summary judgment in the RAV Litigation. The final judgment recites that the court previously granted a partial summary judgment for RAV on Bagwell's counterclaim. It is undisputed that Compass and Meade were never served with citation and did not appear in the RAV Litigation, although they were named in Bagwell's counterclaim and third-party petition filed in that lawsuit.

Res judicata bars relitigation of claims that have been finally adjudicated in a prior action between the parties and any other claims arising out of the same subject matter that could have been litigated in the prior action. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). A party relying on the defense must prove: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). The doctrine seeks to bring an end to litigation, prevent vexatious litigation,

maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Barr*, 837 S.W.2d at 629.

The second requirement of res judicata, that the defendant was a party or in privity with a party to the prior judgment, is dispositive of the defense in this case. Citing only *Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001),[4] Compass argues on appeal that Compass and Meade were parties to the RAV Litigation because in order for Bagwell to appeal the judgment in the RAV Litigation, "all claims and all parties to the RAV Lawsuit, including unserved parties and claims against unserved parties, had to have been finally disposed of in the trial court." We disagree. When summary judgment is granted without disposing of a person named in a pleading, but that person was never served, did not appear in the case, and nothing indicates service was not expected, "the case stands as if there had been *a discontinuance as to [the unserved party]*, and the judgment is to be regarded as final for the purposes of appeal." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674 (Tex. 2004) (per curiam) (quoting *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962)) (emphasis added). Furthermore, "This holding in *Penn* was not overruled, expressly or otherwise, by *Lehmann.*" *Id.*

Thus, the judgment in the RAV Litigation—in the absence of service on or an appearance by Compass and Meade—operated as a discontinuance as to them and was not a judgment on the merits. *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) ("When a case is nonsuited without prejudice, res judicata does not bar relitigation of the same claims."); *Christensen v. Chase Bank USA, N.A.*, 304 S.W.3d 548, 553 (Tex. App.—Dallas 2009, pet. denied) (dismissal without prejudice is not a judgment on the merits for purposes of res judicata).

Therefore, Compass may assert res judicata based on the judgment in the RAV Litigation

---

[4] In *Lehman*, the court clarified the longstanding general rule that "[a] judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record." 39 S.W.3d at 195.

only if it was in privity with RAV.  In general, a person is not bound by a judgment in a suit to which he was not a party.  *See Amstadt*, 919 S.W.2d at 652.  "The doctrine of res judicata creates an exception to this rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit."  *Id.*  People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action.  *Id.* at 653.  Privity connotes those who are in law so connected with a party to the judgment as to have an identity of interest such that the party to the judgment represented the same legal right as the person claiming privity.  *Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.).

Compass argues that, as a predecessor in interest to RAV, it was in privity with a party to the RAV Litigation.  But Compass transferred its legal rights in the Notes and Guarantees to RAV; it does not derive any rights through RAV.  In general, privity-by-succession does not apply to predecessors in interest.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 43 cmt. e (Am. Law Inst. 1982) ("When the owner of property transfers it to another, in general he ceases to be burdened with the legal responsibilities that attend its ownership.").

Compass relies on the decision in *Samuel v. Federal Home Loan Mortgage Corp.*, 434 S.W.3d 230 (Tex. App.—Houston [1st Dist.] 2014, no pet.).  In that case, a borrower filed the first suit against the assignee (CMI) of the mortgage to stop foreclosure proceedings, arguing the assignee did not have authority to foreclose.  *Id.* at 232.  The assignee obtained summary judgment in that suit by producing a written assignment of the mortgage from the assignor (MERS), which was the beneficiary named in the deed of trust.  *Id.* The borrower then filed a second suit against the assignee, the assignor, and the purchaser at foreclosure, again challenging the authority to foreclose and claiming the assignment was fraudulent.  *Id.*  The court of appeals

affirmed the trial court's summary for the defendants in the second suit based on res judicata grounds. *Id.* at 235. The court concluded that the assignee was required to defend the assignor's right to assign the mortgage in defending the first lawsuit. *Id.* Thus, the assignee "represented the legal rights of MERS [the assignor] and Freddie Mac [the purchaser at foreclosure] on the issues alleged against them in this suit[.]" *Id.* Privity was shown by the "identity of interest held by CMI and MERS, as assignor to CMI, in the chain of title to the disputed property." *Id.*

In this case, however, Bagwell did not challenge the assignment in the RAV Litigation and admits in this appeal that Compass's assignment of the Notes and Guarantees was not a breach of any agreement. As far as this record shows, the chain of title was not in dispute in the RAV Litigation.

Nor is there any summary judgment evidence that RAV, in defending against Bagwell's counterclaim, held or asserted the same legal rights as Compass or represented Compass's legal rights on the issues alleged in this lawsuit. Compass did not allege and presented no evidence that it retained any legal rights in the Notes and Guarantees after assigning them to RAV. Bagwell's counterclaim did not allege that RAV was a party to the misrepresentations alleged in this case. The counterclaim did use the word conspiracy in one sentence in the background section, but the pleading does not allege the elements of conspiracy or assert it in support of any of the causes of action raised against RAV.[5] Indeed, the common law fraud claim was not asserted against RAV, and the statutory fraud claim states merely that "With [RAV], Compass Bank and Meade committed fraud in a transaction involving real estate . . . ." Thus, Compass's argument that RAV represented its "legal rights" in the RAV Litigation is not supported by the

---

[5] The causes of action alleged in the counterclaim and third-party petition were: (1) breach of contract against Compass and Meade; (2) declaratory judgment encompassing the other claims raised in the pleading; (3) common law fraud against Compass and Meade; (4) statutory fraud against Compass, Meade, and RAV; (5) DTPA violations against Compass and Meade; (6) Misuse of private information against Compass, Meade, Toll Brothers, and RAV; (7) tortious interference with contractual and future business relationships against Compass, Meade, Toll Brothers, and RAV, and (8) an accounting of all credits on the debt.

record.

On this record, we conclude Compass did not establish the elements of the defense of res judicata. We next consider whether Compass met its summary judgment burden on the collateral estoppel defense.

Collateral estoppel prevents a party from relitigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999) (per curiam). In order to invoke the doctrine, a party must establish: "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (quoting *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)).

Compass had the burden to conclusively establish the collateral estoppel defense in its motion for summary judgment. *See Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 846 (Tex. App.—San Antonio 1997, pet. denied). Normally, this requires the party relying on the defense to offer the pleadings and judgment from the prior suit into evidence. *See Jones v. City of Houston*, 907 S.W.2d 871, 874 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex. App.—Corpus Christi 1990, no writ.). The record must be sufficient to notify the trial court of the issues actually litigated and decided in the prior case. *See Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Grp., P.A.*, 438 S.W.3d 190, 203 (Tex. App.—Dallas 2014, no pet.); *Calabrian Corp. v. Alliance Specialty Chems., Inc.*, 418 S.W.3d 154, 160 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Here, the only evidence submitted by Compass was Bagwell's counterclaim and third-party petition and the final summary judgment in the RAV Litigation. As indicated in our discussion of the res judicata defense, the claims against RAV in the counterclaim were not

identical to claims asserted against Compass and Meade in that pleading. The final summary judgment in the RAV Litigation merely recites that the court previously granted RAV's motion for summary judgment on Bagwell's counterclaim. It does not indicate the basis for the trial court's ruling on that motion for summary judgment.

Compass's collateral estoppel defense is based upon the granting of RAV's motion for summary judgment on Bagwell's counterclaim, but that motion is not in the record before us. Without RAV's motion for summary judgment and Bagwell's response, if any, we have no way of determining what issues were litigated in the prior case and how those issues relate to the issues in this case. We conclude Compass failed to prove the elements of its collateral estoppel defense as a matter of law.

We sustain Bagwell's first and second issues and the Trustee's first issue to the extent their fraud claim seeks out-of-pocket damages. We overrule the remainder of these issues.

## C. Estoppel

Bagwell's fourth and the Trustee's second issues challenge the summary judgment on the estoppel defense. Compass did not address the type of estoppel defense on which it relied in its pleadings, its motion for summary judgment, or its appellate brief. Estoppel can take several forms with varying elements and proof requirements. *See* 34 Tex. Jur. 3d *Estoppel* § 2. From the nature of Compass's arguments, it is relying on estoppel by contract, a form of quasi-estoppel.

Quasi-estoppel is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ). It precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when

it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Id.* Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied).

Estoppel by contract is a form of quasi-estoppel based on the idea that a party to a contract will not be permitted to take a position inconsistent with the contract, to the prejudice of another. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721–22 (Tex. App.—Dallas 2004, no pet.). Thus, the rule is not actually one of estoppel, but another way of saying a party is bound by the terms of his contract, and cannot take a position inconsistent with the contracts' provisions. *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 570 (Tex. App.–Dallas 2007, no pet.); *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 387–88 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Compass's relies on a contractual merger clause in the loan documents and written modification agreements. This clause states: (1) the loan documents are the final and entire agreement and supersede any prior agreements or representations relating to the subject matter; (2) the documents may not be contradicted or varied by prior, contemporaneous, or subsequent oral agreements or discussions; (3) there are no oral agreements between the parties; and (4) the provisions of the loan documents may be amended or waived only by an instrument in writing signed by the parties.[6] The merger clause is substantially in the form required by business and

---

[6] The merger clause is in bold and all-capitals and states in full:

THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND THERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR

commerce code section 26.02(e). TEX. BUS. & COM. CODE ANN. § 26.02(e). The Extension and No-Assignment Representations alleged here were made after the last document containing this merger clause was executed.

The thrust of Compass's argument is that the Extension and No-Assignment Representations are subsequent oral agreements or discussions barred by the terms of the merger clause. However, as Bagwell repeatedly states on appeal, he is not seeking to contradict or vary the terms of the written loan documents. He seeks to recover only out-of-pocket damages he allegedly incurred by relying on the Extension and No-Assignment Representations. To that extent, the language in the merger clause does not estop his claim.

Compass has not shown as a matter of law that Bagwell's limited fraud claim is inconsistent with terms of his contracts. Therefore, Compass failed to prove the elements of its affirmative defense as a matter of law on the claim at issue here.

We sustain Bagwell's fourth and the Trustee's second issues to the extent their fraud claim seeks out-of-pocket damages. We overrule the remainder of these issues.

## D. Economic Loss Rule

Bagwell's fifth and the Trustee's third issues challenge the summary judgment on the economic loss rule argument. The economic loss rule arose in negligence and products liability cases to limit recovery of purely economic damages. *See LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 238–45 (Tex. 2014) (discussing history and development of rule); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415-18 (Tex. 2011) (noting there is no single economic loss rule applicable to all torts, but several limited rules governing

---

SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO OR THERETO. THERE ARE NO ORAL AGREEMENTS OF THE PARTIES HERETO OR THERETO. THE PROVISIONS OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS MAY BE AMENDED OR WAIVED ONLY BY AN INSTRUMENT IN WRITING SIGNED BY THE RESPECTIVE PARTIES TO SUCH DOCUMENTS.

–19–

selected areas of law). In general, "the rule precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes v. Dallas Plumbing*, 445 S.W.3d 716, 718–19 (Tex. 2014) (per curiam) (citing *LAN/STV*, 435 S.W.3d at 243). But the rule has never applied to tort causes of action that by their nature involve only the economic loss flowing from a contract. *See Chapman*, 445 S.W.3d at 718 ("But [the rule] does not bar all tort claims arising out of a contractual setting."); *LAN/STV*, 435 S.W.3d at 235–36 ("the rule is not generally applicable in every situation"). Specifically, the rule does not bar fraud causes of action. *Sharyland*, 354 S.W.3d at 418–19 (listing several tort claims for which courts allow recovery of economic damages, including fraud).

Bagwell has limited his fraud claim to the reliance damages, if any, he suffered in relying on the alleged representations. He does not seek to recover the economic loss from the failure to perform a contract. Therefore, we conclude the economic loss rule does not bar the fraud claim for reliance damages.

We sustain Bagwell's fifth and the Trustee's third issues to the extent their fraud claim seeks out-of-pocket damages. We overrule the remainder of these issues.

### E. Promissory Estoppel

The Trustee's fifth issue argues her promissory estoppel claim is not barred by Compass's defenses.

The Trustee alleged that Compass represented it would renew and extend the Notes, and that DBC and Evermore substantially relied on the promise to their detriment by continuing to do business with Compass and choosing "not to refinance or retire the Notes with another lender or capital source." The Trustee further alleged that as a result of the promissory estoppel, DBC and Evermore "have suffered and sustained substantial injury" including actual and special monetary

damages. There is no allegation that Compass ever agreed to sign an existing written document satisfying the statute of frauds. The Trustee bases the promissory estoppel claim on the same representations Bagwell now says were never promises by Compass. There is no evidence or allegation of any independent promises made to DBC and Evermore.

Compass moved for summary judgment on the promissory estoppel claim arguing there was no promise to sign an existing document that would satisfy the statute of frauds and the claim was inconsistent with the merger clause in the loan agreements. Referring to that clause, Compass argued "reliance on an oral representation that directly contradicts such a disclaimer is not justified as a matter of law." Compass presented evidence that no written document was prepared to extend the maturity of the Notes beyond December 1, 2009 and Compass never promised to sign such a document. The Trustee presented no evidence of a promise to sign an existing document satisfying the statute of frauds in response to the motion for summary judgment.

Promissory estoppel is normally a counter-defensive pleading, but may be asserted to recover damages incurred in reliance on a promise when the contract fails because of the application of the statute of frauds or some other reason. *See Trevino & Assocs.*, 400 S.W.3d at 146. If the alleged oral agreement is within the statute of frauds, it is unenforceable, even by means of promissory estoppel, unless there is also a promise to sign an existing writing incorporating all the terms of the agreement and which would satisfy the statute of frauds. *See "Moore" Burger*, 492 S.W.2d at 940. Thus, "promissory estoppel will only avoid the statute of frauds if the promise made was to execute a document in existence that *itself* complied with the statute. The party asserting promissory estoppel must show that the writing that is the subject of the promise demonstrates the parties have come to a final agreement as to all material terms." *Birenbaum v. Option Care, Inc.*, 971 S.W.2d 497, 504 (Tex. App.—Dallas 1997, pet. denied)

–21–

(footnotes omitted); *see also Nagle*, 633 S.W.2d at 800; *Gaubert*, 286 S.W.3d at 553–54.[7] A promise to prepare a written document incorporating terms orally agreed upon is insufficient to support application of promissory estoppel to defeat the statute of frauds. *CRSS Inc. v. Runion*, 992 S.W.2d 1, 7 (Tex. App.—Houston [1st Dist.] 1995, pet. denied).

The oral promises alleged here were to extend the maturity of the Notes and Guarantees and to refrain from assigning them to another. In light of the broad language of section 26.02, which includes promises or agreements to delay repayment of money or make financial accommodations within the definition of loan agreements, we conclude the oral promises asserted by the Trustee are within the statute of frauds for loan agreements and are unenforceable unless they are in writing and signed by the parties. *See* TEX. BUS. & COM. CODE ANN. § 26.02(a)(2), (b). Promissory estoppel will allow enforcement of those promises to the extent of reliance damages only if there was also a promise to sign an existing document that itself would satisfy the statute of frauds. *Gaubert*, 286 S.W.3d at 553; *Birenbarm*, 971 S.W.2d at 504. Compass presented evidence there was no such writing nor a promise to sign it and Bagwell presented no evidence to the contrary.

Because there was no promise to sign an existing written document that would satisfy the statute of frauds applicable here, summary judgment was proper on the promissory estoppel claim.

We overrule the Trustee's fifth issue.

#### CONCLUSION

We conclude that the statute of frauds bars the fraud claim to the extent appellants seek to

---

[7] We assume without deciding that promissory estoppel as an equitable exception applies to the statute of frauds for loan agreements. *See Gaubert*, 286 S.W.3d at 555 (noting differences between language of traditional statute of frauds and statute of frauds for loan agreements, but assuming that if equitable exceptions apply to statute regarding loan agreements, the exceptions were not shown).

recover benefit-of-the-bargain damages, but not to the extent appellants seek to recover out-of-pocket damages. We also conclude the appellees' remaining affirmative defenses do not support the summary judgment as to the fraud claim for out-of-pocket damages. We reverse the summary judgment to the extent appellants seek to recover out-of-pocket damages for fraud and affirm the summary judgment in all other respects. We remand this cause to the trial court for further proceedings consistent with this opinion.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

141579F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID BAGWELL, INDIVIDUALLY
AND AS TRUSTEE OF THE DAVID S.
BAGWELL TRUST, AND MARILYN D.
GARNER, CHAPTER 7 TRUSTEE OF
THE ESTATE OF THE DAVID
BAGWELL COMPANY AND TRUSTEE
OF THE ESTATE OF EVERMORE
COMMUNITIES, LTD., Appellants

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-00991.
Opinion delivered by Justice Stoddart.
Justices Bridges and Fillmore participating.

No. 05-14-01579-CV        V.

BBVA COMPASS AND SAM MEADE,
Appellees

In accordance with this Court's opinion of this date, the trial court's September 19, 2014 orders granting Compass Bank and Sam Meade's first amended motions for summary judgment against plaintiff and against intervening plaintiff Trustee Marilyn D. Garner are **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's orders granting summary judgment on the fraud claim seeking out-of-pocket damages. In all other respects, the orders are **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with our opinion.

It is **ORDERED** that appellants David Bagwell, Individually and as Trustee of the David S. Bagwell Trust, and Marilyn D. Garner, Chapter 7 Trustee of the Estate of the David Bagwell Company and Trustee of the Estate Of Evermore Communities, LTD. recover their costs of this appeal from appellees BBVA Compass and Sam Meade.

Judgment entered this 7th day of July, 2016.